United States District Court
Southern District of Texas
**ENTERED**
July 27, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROHOLLAH R. SEDDIQ, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-3326 |
| | § | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

Pending before the court is the defendant Federal National Mortgage Association's ("Fannie Mae") motion to dismiss (Dkt. 5) a suit filed by plaintiff Rohollah Seddiq. Having considered the motion, responses, reply, and applicable law, the court finds that Fannie Mae's motion to dismiss should be GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

This case relates to the refinancing of a property located at 23102 North Waterlily Drive, Richmond, Fort Bend County, Texas 77406 (the "Property"). Dkt. 1, Ex. 1 at 9. On September 20, 2017, Seddiq filed suit against Fannie Mae in the 268th Judicial District Court in Fort Bend County, Texas. Dkt. 1 at 1. Seddiq asserts that he executed a Texas Home Equity Note and a Home Equity Security Agreement ("Deed of Trust" or "DOT") on August 29, 2012, with Nations Reliable Lending, L.L.C. ("Lender"). *Id.* Ex. 1 at 9. Further, Seddiq asserts that he has complied with his obligations under the DOT and that he is current on his mortgage payments. *Id.* The DOT specifies that the parties expressly intend to conform to Article XVI, Section 50(a)(6)(E) of the Texas Constitution. *Id.*

According to Seddiq's original complaint, Lender, and Fannie Mae as Lender's successor in interest, violated Section 50(a)(6)(E) by charging Seddiq more than the constitutional limit on home equity loan fees—3 percent of the loan principle. Dkt. 1, Ex. 1 at 10. Seddiq alleges he was required to pay $5,231.39. Dkt. 1, Ex. 1 at 10. Fannie Mae asserts Seddiq was only required to pay $2,893.74. Dkt. 5 at 6. Seddiq claims that he sent a Notice to Cure the violations to Fannie Mae on April 20, 2016, and that as of the filing date Fannie Mae had failed to cure the violations. *Id.* Seddiq also alleges that Fannie Mae breached its contract by breaching its obligations under the DOT. *Id.* at 11. Seddiq requests remedies of quiet title, declaratory judgment, a permanent injunction, and attorney's fees. *Id.* at 13-16.

On November 10, 2016, Fannie Mae removed the case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Dkt. 1. On November 17, 2016, Fannie Mae filed a motion to dismiss. Dkt. 5. On December 8, 2016, Seddiq filed a response to Fannie Mae's motion. Dkt. 13. On December 14, 2016, Seddiq filed a supplemental response. Dkt. 15. On December 23, 2016, Fannie Mae filed its reply. Dkt. 16.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 127 S. Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

### III. ANALYSIS

Fannie Mae seeks dismissal of Seddiq's claims for constitutional violations and breach of contract in addition to Seddiq's requests for quiet title, declaratory judgment, injunctive relief, and attorney's fees. Dkt. 5. The court will address the causes of action and the requests for relief in turn.

**A.    The Three Percent Rule**

Seddiq contends that Fannie Mae violated the Texas Constitution by charging fees exceeding the three percent cap. Dkt. 1, Ex. 1 at 10. Under the Texas Constitution a home equity loan must:

> not require the owner or owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit.

TEX. CONST. art. XVI, § 50(a)(6)(E) (amended 2013). To state a claim under this provision of the Texas Constitution, Seddiq must allege that he was required to pay fees in excess of three percent.

Both parties agree that three percent of the $114,400.00 loan is $3,432.00. Dkt. 1, Ex. 1 at 10; Dkt. 5 at 3; Dkt. 13 at 3; Dkt. 16 at 2. Seddiq claims that he was charged, and Lender required him to pay, "fees . . . equal[ing] or exceed[ing] $5,231.39." Dkt. 1, Ex. 1 at 10; Dkt. 13 at 3. For a motion to dismiss, the court accepts all well-pled facts contained in Seddiq's original petition.

*Twombly*, 550 U.S. at 555; *Avondale Shipyards*, 677 F.2d at 1050. Attached to his original petition, Seddiq included an unofficial copy of the settlement statement (the "HUD-1") executed at the closing on the Property. Dkt. 1, Ex. 1 at 39-42.

Seddiq alleges that he was charged the following fees: origination ($1,290.00); appraisal ($350.00); credit report ($30.00); flood certification ($20.00); underwriting ($530.00); attorney review ($150.00); processing ($500.00); funding ($110.00); title services and lender's title insurance ($1,494.26); escrow ($350.00); lender's coverage ($400.13), T3, T30, T36, T17, T19, T19.2, T42, T42.1 Texas forms ($195.25); tax certificate ($59.75); Texas policy guarantee ($2.00); government recording ($100.00); and HOA refinancing ($50.00). *Id.* at 10-11. The total of these fees is $5,631.39. Dkt. 13 at 4. However, in his response to Fannie Mae's motion to dismiss, Seddiq accounts for the lender credit of $400.00 and argues that the total fees charged equal $5,231.39. *Id.*

Fannie Mae argues that Seddiq's allegations misrepresent and overstate the amount charged at settlement by attempting to double many of the fees. Dkt. 5 at 3-7. Fannie Mae points out that the underwriting, attorney review, processing, and funding fees equal the origination fee when totaled ($530.00 + $150.00 + $500.00 + $110.00 = $1,290.00). Dkt. 5 at 6. Further, Fannie Mae notes that the appraisal, credit report, and flood certification fees equal $400.00. *Id.* It argues that the HUD-1 shows a $400.00 Lender Credit on line 204, which was applied to counteract these charges. *Id.* Fannie Mae contends that the correct calculation of fees actually charged which apply to the three percent fee cap are as follows: origination ($1,290.00), title services and lender's title insurance ($1,494.26), government recording ($100.00), and HOA refinance ($50.00). Dkt. 5 at 5-6. Further, Fannie Mae argues that the daily interest charges in the amount of $40.52 should be subtracted from the total charged. *Id.* Fannie Mae's calculated total fee charge equals $2,893.74, less than the three percent fee cap of $3,432.00. *Id.*

The court's inquiry into the correct fee calculation must stop at whether Seddiq stated a claim showing that he is plausibly entitled to relief. A claim may be plausible "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Seddiq properly alleged that he was required to pay fees exceeding the three percent cap and provided a factual basis for such allegations in his original complaint. Dkt. 1, Ex. 1 at 10. Therefore, Fannie Mae's motion to dismiss with regard to Seddiq's constitutional claims is DENIED.

**B.     Breach of Contract**

Next Seddiq argues that Fannie Mae has breached its contract to Seddiq under the DOT. Dkt. 1, Ex. 1 at 11. To prevail on a claim for breach of contract under Texas law, a plaintiff must prove that (1) a contract exists, (2) the plaintiff performed, (3) the defendant breached, and (4) the plaintiff suffered damages resulting from the defendant's breach. *See Crose v. Humana Ins. Co.*, 823 F.3d 344, 347 (5th Cir. 2016) (citing *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2009)).

Fannie Mae argues that Seddiq's breach of contract claim fails because (1) there are no constitutional violations, and (2) the claim was brought outside the acceptable statute of limitations. The court will address each in turn.

First, Seddiq claims Fannie Mae breached its contract under the settlement agreement by violating Section 50(a)(6)(E) of Article XVI of the Texas Constitution. Dkt. 1, Ex. 1 at 11. Seddiq asserts a claim that the DOT and HUD-1 contract was breached. *Id.* He contends that he performed and that Fannie Mae breached the contract when it failed to cure violations of Section 50(a)(6)(E). *Id.*; Dkt. 13 at 8-9. The DOT states that if Seddiq is charged in excess of the permitted limit, the extension of credit "shall be reduced by the amount necessary to reduce the charge to the permitted limit," and the amount paid in excess of the limit "will be refunded." Dkt. 1, Ex. 1 at 11. Further,

the DOT specifies that before Seddiq can take action on a violation of Section 50(a)(6), he must provide Fannie Mae, as Lender's successor in interest, with notice of noncompliance and allow it 60 days to comply. *Id.* at 12; Dkt. 13 at 8. The agreement further states that if Lender fails to cure such violations "all principal and interest [shall] be forfeited by Lender." Dkt. 1, Ex. 1 at 12; Dkt. 13 at 8. Seddiq contends that he notified Fannie Mae of its noncompliance on April 20, 2016. Dkt. 1, Ex. 1 at 13. Further, the violation was not cured within the allotted 60 days, and had still not been cured at the time of filing on September 20, 2016. *Id.* Finally, Seddiq alleges that the payments he made to the Lender since the inception of the loan must be reimbursed because the "lender was not entitled to receive any of these payments because the lien is void." *Id.*

Fannie Mae argues that the breach of contract claim must be dismissed because Seddiq was not charged fees in excess of the three percent cap and therefore does not allege facts which support a claim for breach of contract or that Seddiq suffered damages from such a breach. Dkt. 5 at 8. The court has determined that Seddiq pled sufficient facts for the constitutional allegations to survive this motion to dismiss. Therefore, this argument is insufficient to grant Fannie Mae's motion to dismiss the breach of contract claim.

Secondly, Fannie Mae alleges that Seddiq brought his complaint outside of the four-year statute of limitations period. *Id.* (citing Tex. Civ. Prac. & Rem. Code § 16.004). "An action for breach of contract is governed by a four-year statute of limitations." *Smith v. Ferguson*, 160 S.W.3d 115, 123 (Tex. App.—Dallas 2005, pet. denied). "A breach of contract claim accrues when the contract is breached." *Id.* (citing *Stine v. Stewart*, 80 S.W.3d 586, 592, 45 Tex. Sup. Ct. J. 966 (Tex. 2002)). Fannie Mae argues that by bringing the breach of contract action on September 20, 2016, Seddiq missed the statute of limitations window, which expired August 29, 2016—four years after the August 29, 2012, settlement date. *Id.* Therefore, Fannie Mae

6

alleges that because Seddiq was aware of the supposed breach on August 29, 2012, the statute of limitations began running, and expired, prior to his suit. *Id.* at 9 (citing *Feuerbacher v. Wells Fargo Bank, N.A.*, No. 4:15-CV-59, 2016 WL 3669744 (E.D. Tex. July 11, 2016) (Mazzant, J.) (mem. op.) (holding that a breach of contract claim under Section 50(a)(6)(E) accrues when the loan violating Section 50 is made)); *see Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (per curiam) (noting that a claim for breach of contract accrues upon breach and is not delayed by the discovery rule).

Seddiq responds that his claim for breach of contract is not barred by the statute of limitations because the claim for breach of contract did not arise until 61 days after Fannie Mae received notice of its constitutional violation. Dkt. 13 at 8; Dkt. 15 at 2. Seddiq alleges that the breach of contract occurred when Fannie Mae "failed to timely cure" the violation. Dkt. 13 at 8. Seddiq further argues that the court in *Wood* held that borrowers may use a breach of contract claim to obtain a remedy of forfeiture but the court "did not suggest that a breach of contract claim based on forfeiture occurred at the time of origination." *Id.* at 9 (citing *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 550 (Tex. 2016)).

However, Fannie Mae argues that a remedy of forfeiture and an underlying claim for breach of contract are different. Dkt. 16 at 4 (referencing *Garofolo v. Ocwen Loan Servicing*, 497 S.W.3d 474, 481 (Tex. 2016). "[I]n arguing that a claim for breach of contract does not accrue until the lender fails to cure an alleged defect in a home-equity loan, Seddiq confuses a contractual remedy . . . with the cause of action itself." *Id.* Fannie Mae contends that the court has been careful to distinguish between forfeiture as a remedy and a claim for breach of contract in recent cases. *Id.*; *see Garofolo*, 497 S.W.3d at 479.

This court agrees with Fannie Mae. "It is well-settled law that a breach of contract claim accrues when the contract is breached." *Stine*, 80 S.W.3d at 592 (citing *Smith v. Fairbanks, Morse & Co.*, 102 S.W. 908, 909 (Tex 1907)); *see Waco Tap R. Co. v. Shirley*, 45 Tex. 355, 375 (1876) ("The cause of action accrues immediately on the breach; suit may be brought at once; . . . ."). Since the breach of contract on the DOT and HUD-1 accrued at the time it was signed, the statute of limitations on the claim began to accrue on August 29, 2012. The court finds that this claim was brought outside the four-year statute of limitations and therefore Fannie Mae's motion to dismiss with regard to Seddiq's breach of contract claim is GRANTED.

**C.     Quiet Title, Declaratory Judgment, Injunctive Relief, and Attorney's Fees**

Fannie Mae seeks dismissal of Seddiq's requests for quiet title, declaratory judgment, injunctive relief, and attorney's fees. Dkt. 5. The court does not view these as causes of action; it views them as remedies. As such, the court will make a determination with regard to these remedies upon the adjudication of the underlying constitutional claim.

### IV. CONCLUSION

Fannie Mae's motion to dismiss (Dkt. 5) is GRANTED IN PART with respect to the breach of contract claim and DENIED IN PART with respect to the Texas constitutional violation claim. Seddiq's cause of action for breach of contract is DISMISSED WITH PREJUDICE. *Id.*

It is so ORDERED

Signed at Houston, Texas on July 27, 2017.

_____
Gray H. Miller
United States District Judge